*Middlesex,*
July, 1841.

SCOVIL and another *against* KENNEDY and others.

Scovil
*v.*
Kennedy.

A partition of real estate held in common, is matter of right; and the difficulty
of making partition, and the inconveniences resulting to the other tenants,
furnish no sufficient reason for denying it.

*B* owned two pieces of land, with a stream of water running through them, on
each of which he had a mill, propelled by the water of said stream. On the
upper piece, he had a dam, mill-pond, flume and conductor. The water for
the use of both mills passed from the dam through the flume. That for the
use of the upper mill was taken from the flume, by means of two orifices in
it; and that for the use of the lower mill, by means of a conductor inserted in
the flume, and extending from it to the mill. *B* conveyed to *S* the upper mill
site, and one half of the pond flowed by the dam, by a deed containing the
following clause; " always provided, and this deed is given on condition, that
the grantor is to have and retain the privilege of conveying water from said
dam, through a conductor similar to the one now in use, till the same shall
arrive at the *East* end of the new shop, [the upper mill] and thence, either by
a conductor, race or otherwise, to the shop [lower mill] lying *East* of the new
shop." The rights of *B* in the lower mill, afterwards became vested in *K*
and *S*; *K* owning two thirds, and *S* one third. On a bill in chancery for a
partition, brought by *S* against *K*, it was held, that the fair construction of
such reservation was, that the grantee was to have one half of the water, and
the grantor the remaining half, with the privilege of carrying that half, ac-
cross the premises granted, to the shop retained by the grantor; 2. that the
mode of partition best fitted to do justice to the parties, was, to divide the wa-
ter, by means of equal orifices, at the same level; it being found, that the ex-
pense of this mode would be inconsiderable in comparison with the disadvan-
tages of a different mode; but 3. as it was not found of what dimension
such orifices ought to be, it would be necessary to send the case again to a
committee, to determine of what size, form and level they should be made; 4.
that on partition being so made, an injunction previously granted, on the
application of *K*, restraining *S* in the use of the water, ought to be dissolved.

THIS was a bill in chancery for the dissolution of an injunc-
tion and a partition of the use of water, to be made by time.
For a statement of the subject matter of the bill and of the
right of the parties in relation thereto, it may be sufficient to
refer to the two former cases of *Kennedy* & al. v. *Scovil* &
al. 12 *Conn Rep.* 318. and 13 *Conn. Rep.* 61. The injunc-
tion sought to be dissolved was granted pursuant to the advice
of this court in the former case. In *February,* 1839, the su-
perior court appointed a committee to enquire into the facts
set forth in the bill, and to make report thereof, with their
opinion thereon, as to the partition, if any, which could or
ought to be made.

The committee, after describing the land, stream of water,

dam, pond, flume and mills, as they are represented in the first-mentioned case, found, that the supply of water was sufficient for both the upper and lower mill, during from eight to nine months in the year; but that during the remaining months there was a considerable deficiency, increased by the works being in a bad state of repair, so as to produce a great waste of water by leakage, chiefly in the conductor; that the water was drawn, at the upper mill, through two orifices, and at the lower mill, through one orifice only; stating the dimensions of each. In regard to the relative quantity of water used at the two mills, the committee, notwithstanding the opposing testimony of a majority of the witnesses examined, came to the conclusion, that "in general, most water is used at the lower mill." They were of opinion, that a division of the water by *time*, (the mode of division specifically prayed for in the bill,) ought not to be made. They then stated, that they had enquired whether it was practicable to divide the water in any other mode better suited to the circumstances of the case and the situation of the parties. No mode of division, however, had occured to them, which would make a perfect separation between the interests of the parties. The mode which would approach the nearest to such a result, would be, to divide the pond into two equal reservoirs, by a longitudinal dam or dyke, running up and down stream; to cause the stream, which supplies the pond, to flow over a weir, in such manner, as always to discharge an equal quantity of water into each reservoir, and to connect the works of the parties with their reservoirs respectively. This arrangement would leave little or no joint interest in the parties, except in the preservation of the wier and dividing dyke; but it would involve so much expense, and owing to the relative location of the mills and pond, would be attended with so much difficulty, that the committee could not recommend its adoption. In order to effect such a division, it might, moreover, be necessary for the parties to obtain a title to some of the land adjoining the stream, above the pond, now owned by persons other than any of the parties in this case; which constitutes an additional objection to the mode of division last-mentioned.

Another mode would be, to divide the flume, by a perpendicular longitudinal partition, and plank it up at the upper end

to within a few inches of the top of the water, so as to cause an equal quantity of water to flow over the plank into each division of the flume. This arrangement might be effected at a trifling expense; but it would involve a sacrifice of all the benefits of the pond as a reservoir, because, under this arrangement, the pond could not be to any extent exhausted.

*Middlesex,*
July, 1841.
———
Scovil
*v.*
Kennedy.

Another arrangement, although not precisely in the nature of a division of the water, would be to equalize, between the parties, the power of drawing the water, by a proper adjustment of their respective orifices. Notwithstanding the orifices are now at different depths, if the height of the pond did not vary, they might be adjusted so as to discharge equal quantities of water, by changing their dimensions merely, without equalizing their depths. But since the height of the water in the pond varies, no dimensions can be assigned for the orifices in their present location, which will cause them, at all times, to discharge equal quantities of water. In order, therefore, to place the orifices on a level, it would be necessary to raise those at the upper mill. But this, though practicable, would be attended with so much expense and difficulty, that the committee could not recommend that it should be required to be done.

The committee, however, were of the opinion, that an arrangement, based on the principle of *equalizing between the parties the power of drawing the water,* was one best suited to the case, under all the circumstances. If an equal share of the water can be secured to the proprietors of the lower mill, subsequent to the time, when, by the exhaustion of the pond, the two drafts become equal, no injury could accrue to them from continuing the orifices at the upper mill as they now are; and it might then be left to the option of the proprietors of the upper mill, to raise and enlarge their orifices, so as to get an equal share of the water prior to the exhaustion of the pond.

The arrangement which has been chosen, say the committee, as, on the whole, best adapted to the circumstances of the case, has for its object, an equal division of the water which flows into the flume, subsequent to the time, when, by the exhaustion of the pond, the drafts of water at the two mills become equal, and to leave it to the option of the party, which can draw least water prior to that time, so to adjust its orifices

*Middlesex,*
*July, 1841.*

Scovil
*v.*
Kennedy.

as to place itself, at all times, on an equal footing with the other party.

With these views, and for the purpose of equalizing, between the parties, the power of drawing the water, the committee recommended, 1. That a transverse partition be put in the flume at a distance of 8 or 10 feet from its upper or western end: the top of said partition to be level, and 3 feet 9 inches below the surface of the water, when the pond is full. That the part of the flume *East* of the transverse partition, be divided into two equal parts, by a perpendicular longitudinal partition, terminating, at its *Western* end, in the centre of the transverse partition; the top of said longitudinal partition to be level, and 2 feet 9 inches below the surface of the water, when the pond is full.

2. That the proprietors of the upper mill be permitted to retain their orifices as they now are, or at any time, at their option, to close them, and open one or more new ones, whose bottom shall not be lower than the bottom of the orifice at the lower shop, and whose aggregate area shall not be greater than the area of the orifice at the lower mill.

Under this arrangement, when the water is drawn down to the top of the longitudinal partition, the leakage that occurs during the hours of work, and while the water is undergoing an equal division, will be, as it should be, taken from the share of that party by whose negligence it is occasioned. But at all other times, the leakage, wherever, it occurs, will draw from the common reservoir. It would therefore be proper, in the opinion of the committee, that both parties should be required to keep their appropriate parts of the works in reasonable order.

At the the term of superior court in *February, 1840, to* which the report of the committee was returned, the defendants filed their remonstrance to the acceptance of such report, on the following grounds:

1. That the premises, and the rights of the parties respectively therein, are incapable of partition, without doing great and manifest injury to the defendants.

2. That the mode of partition recommended by the committee, would prevent or obstruct the enjoyment, by the defendants, of the right pertaining to their establishment, by

virtue of the reservation contained in the deed from *Giles Brainard* and *Hiram Woodruff*, of the 8th of *June*, 1832. (*a*)

*Middlesex,*
*July, 1841.*

Scovil
*v.*
Kennedy.

3. That such mode of partition was exceptionable for other reasons, which were specified in the remonstrance, but which it is not necessary to state in this place.

The plaintiffs denied, that the deed of *Brainard* and *Woodruff* reserved any prior right to the use of the water, and claimed, that in another suit between these parties, *viz.* a bill in chancery for an account, brought by the present defendants against the present plaintiffs, it was admitted, by the parties on the record, and found by the court, that the use of the water belonged to them respectively in equal undivided moieties, and so the defendants ought to be estopped to aver the contrary; to prove which the plaintiffs offered in evidence the record of the suit. (*b*)

To the admission of this evidence the defendants objected, but it was admitted, subject to the opinion of this court.

After hearing the parties upon the exceptions to the report the court found, that the expense to the plaintiffs of raising their apertures to a level with that of the defendants, and leaving the outlets for the water to pass upon the plaintiffs' wheels, as at present located, or of otherwise adapting the machinery thereto, would be inconsiderable in comparison with the disadvantage to which the defendants would be subjected, by a partition in the mode recommended by the committee. But, on the other hand, the owners of the upper mill, would not, at all times, have the same advantages from the water, in the use of their bellows and trip-hammer, that they now have. The court also found, that as the defendants had been accustomed to use the water for the purpose of carrying on the business of their manufactory, or as they might use it to advantage for their business, on the present scale, the ordinary expenditure of the water is much less than that assumed by the committee, as the quantity which the orifice, when fully open, is capable of discharging.

The questions as to the reservations in the deed of the 8th of *June*, 1832, upon the admission of evidence, as to the effect of the admissions of the parties appearing upon the re-

(*a*) See the terms of the reservation, 12 *Conn. Rep.* 319.

(*b*) See the case referred to, 13 *Conn. Rep.* 61.

*Middlesex,*
*July, 1841.*
———————
*Scovil*
*v.*
*Kennedy.*

cord, and as to the report of the committee, as affected by the facts found by the court, were reserved for the consideration of this court.

*Hungerford* and *Barnes,* for the plaintiffs, contended, 1. That as a community of property tends to produce discord among the owners, the law, from motives of public policy, declares, that estates held in common shall be aparted, on the application of one or more of the proprietors, without the consent of the rest, and even against their will. Partition is a matter of *right,* both at law and in equity. 2 *Bla. Com.* 185. 189. 1 *Sto. Eq.* 602. *Code Napoleon, Civil,* no. 815. (*a*)

2. That no difficulty in making a partition is allowed to prevail in equity, (whatever may be the case at law,) because the powers of the court are adequate to a full and just compensatory adjustment. 1 *Sto. Eq.* 609. 610. 1 *Mad. Chan.* 245. If a thing owned by tenants in common is impartible among them, by actual division, without destroying it, then the use of it may be aparted, by time, or by turns. 1 *Bac. Abr.* 446. 2 *Bla. Com.* 189. The subject of the present suit is, therefore, capable of partition in a court of equity.

3. That the owners of the respective mills are entitled to the use of the water, by moieties.

In the first place, such is the finding of the superior court on the bill for an injunction. 12 *Conn. Rep.* 318. The decree in that case is based on the assumption of equal title in the parties. The fact of equality of title in the parties, appears distinctly; and that is the only fact, which can justify the terms of the decree.

Secondly, the deeds of *Brainard* and *Woodruff,* to *Scovil* and *Allison,* convey *one half* of the water. The proviso, by way of exception or reservation in those deeds, if extended beyond the obvious purpose of securing the transmission of water to the lower mill, by means of a conductor, is uncertain and repugnant to the previous grant, and therefore void. It is uncertain, because the quantity of water retained or reserv-

(*a*) TRANSLATED EXTRACT. "No one can be constrained to hold property in common and undivided with others; and partition may always be claimed, notwithstanding any prohibitions and agreements to the contrary. They can merely agree to suspend partition for a limited time. Such an agreement cannot bind the parties beyond five years; but it may be renewed." *Code Civil,* no. 815.

ed for the necessary accommodation and use of the lower mill, is in no manner defined. It is repugnant to the grant, because water for the necessary use and accommodation of the lower mill, may mean, and according to the construction of the defendants, does mean, *the whole* of the water. On this point, the cases of *Bullen* v. *Denning*, 5 *Barn. & Cres.* 842. Earl of *Cardigan* v. *Armitage*, 2 *Barn. & Cres.* 147. and *Marshall* v. *Niles*, 8 *Conn. Rep.* 369. were referred to.

Thirdly, the defendants in their bill of account against the plaintiffs since the decree of injunction, have admitted the right of the plaintiffs to a moiety of the water. 13 *Conn. Rep.* 62. Having thus spoken the truth, they are not now at liberty to deny it. The law presumes that their acts and declarations are conformable to the real state of things, and will not allow them to contradict the presumption. This is the reason and foundation of the doctrine of estoppels. *Pelletreau* v. *Jackson* d. *Varick*, 11 *Wend.* 117. per *Nelson*, J. 4 *Kent's Com.* 261. n.

4. That the report of the committee should be accepted, and partition should be made in the mode which they have recommended. This mode is based on the principle of equalizing between the parties the power of drawing the water. The principle is unexceptionable; and the application of it to a similar case has been sanctioned, by a judicial decision. *Morrill* v. *Morrill*, 5 *N. Hamp. Rep.* 134. No unequal burden or loss, is laid upon the defendants, by the plan of the committee. And if the plaintiffs are right in their construction of the reservation in the deeds of *Brainard* and *Woodruff*, the defendants have no superior equity, which forbids a partition.

5. That no new testimony was admissible before the superior court, in support of the exceptions to the report. *Blake's Chan. Prac.* 275. 2 *Mad. Chan.* 515.

6. That if the testimony was admissible, still it does not vary the report of the committee on the important point that most water is generally used at the lower mill. The opinion of the committee on this point, is not negatived, but confirmed, by the finding of the superior court; and consequently, none of the present advantages of the upper mill in using the water, ought to be diminished, as they clearly would be, by simply placing the apertures at the respective mills, on the same level.

7. That the injunction ought to be removed, even if a par-

tition is denied. Evidence of malicious waste only will justify an injunction between tenants in common; and no such evidence exists. 1 *Mad. Chan.* 147, 8.

*Baldwin* and *Clark*, for the defendants, contended, 1. That the premises are incapable of partition, without depriving the defendants of their right reserved in the deed of the 8th of *June*, 1832, of drawing from the pond at all times, as much water as should be *necessary* for the accommodation and use of their mill. A moiety only having been granted, the owners of the lower mill would have retained, of course, the right of receiving their moiety, through the flume and conductor, in the usual manner in which it had before been drawn. 12 *Conn. Rep.* 323, 4. To entitle them to this, there would have been no need of inserting any words of reservation. The inquiry, then, presents itself, for what purpose were those words so carefully inserted ? That they were intended to reserve something for the benefit of the lower mill, is very apparent. The reservation was entirely without any object or utility, unless it was designed to limit the grant so as to reserve to the lower mill a greater privilege than it would otherwise retain. What is the meaning of the words, " for the *necessary* accommodation and use of the old shop ?" Why was the word, " necessary" introduced ? It was not introduced for the purpose of restraining the owners of the lower mill, (the grantors,) from taking, at all times, *as much as half* of the water, even though it might not be needed by them, and though the upper mill owners might be suffering for the want of it. For the grantors had only conveyed to the upper mill a moiety : and of course, they retained the other moiety, to use as they pleased. A reservation surely is not intended to enlarge the rights granted, or to diminish the right retained, by the general words of the grant. On the contrary, its only purpose is, to add to the latter right. The lower mill would have retained the privilege of a moiety of the water, to be taken in the usual mode, *without any stipulation*, whether necessary or not for its own accommodation. But if the intention of the reservation was to provide *always* against any deficiency at the lower mill, even though more than half the water might be required for its accommodation, there would be an obvious propriety in *limiting* this reservation of a right, to use, at such times, *more than half*, by the necessity which might call it into exercise.

Hence, although it was intended, that the lower mill should always have a supply from the pond, in preference to the other, in case of a deficient supply for both, it was not intended, that the power of drawing it, in such a case, should extend beyond what should be necessary for the accommodation and use of the old shop.    The meaning, then, is, as it was understood and cotemporaneously expounded, by the conduct of the parties, that the water power, when there was a full supply for both, should be equally enjoyed ; but that, in case of a deficiency, the lower mill should retain the privilege of taking just so much more than its half as should be *necessary* for its accommodation and use.

2. That the defendants are not *estopped* from insisting upon this construction of the deed, by the admission made by them in their bill for an account, and by the admission made by the parties on the record, in that case, that " the use of the water belonged to them respectively, in equal and undivided moieties."    Such  admissions cannot have the effect claimed, because there was no claim in that case, that the plaintiffs, (the present defendants,) during the time for which the account was sought, had *need of more than half* the water for the accommodation of their mill.    And unless such *necessity* was shown, they would not, by the terms of the deed or reservation, be entitled to any more than a moiety of the water.    It is found by the committee, in this case, that during nine months in every year, the supply of water is abundant for both.    If it were barely sufficient, when equally used, one might seriously injure the other, by taking more than his share; but each would, nevertheless, during such a period, be the owner of an undivided moiety.    Such may well be presumed to have been the case, in the absence of any allegation to the contrary, during the period for which the account was demanded ; and there would be no call for the assertion of superior right, which would exist in favour of the lower mill, in case of a deficiency.    But in an application for partition, it becomes essential to take into view *all the rights* of the parties, which may be affected by such partition.    There was no *inconsistency*, therefore, between the admission made in reference to the bill for an account and the existence of a superior right in case of a deficiency, for the necessary accommodation of the lower mill, now claimed under the reservation.    The ad-

Middlesex,
July, 1841.

Scovil
*v.*
Kennedy.

*Middlesex,*
July, 1841.
———
Scovil
*v.*
Kennedy.

mission in the former case, is, therefore, no estoppel to prevent the truth from being proved, by the defendants, in the present case.

But if it were admissible for that purpose, its effect is destroyed, by estoppels of at least equal force, binding on the plaintiffs, *viz.* by the admission in this case, that the plaintiffs and defendants, are tenants of the premises in common and undivided, in the *manner* and *proportion* in which their respective rights and titles are set forth in the finding of the superior court on the bill of the plaintiffs for an injunction, and the deeds thereto annexed, which are inserted in, and form a part of, the present bill of the plaintiffs. The plaintiffs, then, are estopped to deny what they have thus averred and admitted on the record, and the parties are referred for the actual title, to the deeds, &c. " Estoppel against estoppel puts the matter at large." *Syst. Plead.* 256. *Co. Litt.* 352. *a.* See also *Co. Litt.* 352. note *m.* An admission of a fact on the record, in this case, is not only equal in force to an admission in any other case, but is necessarily a *waiver* of the right of the party making it, to rely on any matter of estoppel to the contrary. And as an estoppel which can be pleaded, is, by implication, waived, by an omission of the party to plead it, much more is it waived, by a distinct admission of any facts against the proof of which the party might have relied on the estoppel.

If then, by the deed to which the court is referred, by the admission of the parties, it is apparent, that the defendants, by the terms of the reservation, have a right, at all times, to as much water from the pond as shall be necessary for the accommodation and use of their mill, or, in other words, to propel the machinery thereof, and there is no estoppel, it makes an end of the case. No partition can be made, without destroying the right of the defendants.

3. That if the parties were tenants in common in equal moieties, partition in the mode recommended by the committee would be unjust to the defendants, and not warranted by the facts found.

In the first place, the mode of partition recommended by the committee is based on the *assumption,* (not a finding of the fact,) that the defendants at the lower mill use all the water that their orifice is capable of discharging; whereas in fact they use but a small part of it, while the plaintiffs, for their

trip-hammer wheel, use all that their orifice enables them to draw. The report of the committee as to the use of the water is so vague and uncertain, that it cannot be safely adopted as the basis of partition. It is, in fact, not a finding, but a mere expression of opinion. But the court has found, that the quantity of water used, and which may advantageously be used, at the lower mill, is *much less* than that assumed by the committee as the quantity which the orifice, when fully opened, is capable of discharging.

Secondly, the committee do not find *how expensive* in comparison with the value of the property, would be the mode of division which they first suggest as approaching nearest to a perfect one.

Thirdly, the committee express the opinion that an arrangement based on the principle of equalizing the power of drawing the water, is the one best suited to the case. The only mode in which that can be done, without injury to the defendants, is, to require them to take the water from equal orifices, and of a capacity equal to that ordinarily used by the defendants, and to place them on the same level. This would require the plaintiffs to raise their orifice, which they have lowered since the building of the mill. The only objection made to this mode, by the committee, is, that it would be attended with so much expense, difficulty, &c.; but they do not find how great the expense and difficulty would be. It is, therefore, open to enquiry. And the superior court find, that it would be *inconsiderable* in comparison with the disadvantage the defendants would be subjected to, by a partition in the mode recommended by the committee. The committee, therefore, have rejected the most equal mode of division, to avoid an expense and difficulty on the part of the plaintiffs, *inconsiderable* in comparison with the injury to the defendants by the mode they recommended.

Fourthly, that the basis assumed by the committee is wrong and injurious to the defendants, is evident from the fact, that while they find that the plaintiffs require for their trip-hammer all that their orifice is capable of discharging, the court find that the lower mill uses much less than its orifice is capable of discharging; yet the committee recommend, that the upper mill owners shall be at liberty, at their pleasure, to raise their orifices to the level, and increase their capacity to the

dimensions of the orifice at the lower mill. But a partition, if made at all, should be made as a *permanent* arrangement, and leave nothing to pleasure or caprice, which might be used to the disadvantage of the other.

Fifthly, the only mode which can be adopted, on the principle of equalizing the power, would be, to *reduce* the orifice at the lower mill to the dimension at which it is ordinarily used, and to elevate, and give the same area to, the orifices which supply the upper mill.

4. That the testimony which was offered by the defendants, in support of the facts set forth in their remonstrance, was properly admitted by the court. *Kendall* v. *The New-England Carpet Company,* 13 *Conn. Rep.* 384. See also 5 *Day,* 548.

WAITE, J. The plaintiffs have brought their bill, averring, that they are entitled to the use of one undivided moiety of a certain stream of water for the accommodation of their mill, and the defendants and *Scovil* are the owners of the remaining moiety, to be used for the accommodation of another mill, and praying for a partition of the same.

This partition is opposed, by the defendants, upon two grounds. They claim, in the first place, a prior right to use the water; and secondly, that the property is of such a nature as to be incapable of a division, without great injury to them.

1. The first claim is founded upon the reservations contained in the deeds of *Giles Brainard* and *Hiram Woodruff.* But those reservations are to be taken in connexion with the other parts of the deeds. The fair construction to be given them, is, that the grantees were to have *one half* of the water, and the grantors the remaining half, with the privilege of carrying that half, across the premises granted, to the shop retained by the grantors.

This construction is in conformity to the opinion which we have heretofore expressed. *Kennedy* & al. v. *Scovil* & al. 12 *Conn. Rep.* 323. And a different one might, at certain times, render inoperative the grants; as the *whole* of the water might be required for the necessary accommodation of the lower shop. But if the reservation is confined to the *conveyance* of the water, effect will be given to all parts of the deeds.

2. With respect to the other objection, it seems to be very

well settled, that the difficulty of making a partition, and the inconveniences resulting to the other tenants, furnish no sufficient reason for not making a division. *Baring* v. *Nash*, 1 *V. & B.* 555. *Warner* v. *Raynes, Amb.* 589. In the case of *Parker* v. *Gerard*, Sir *Thomas Clark*, master of the rolls, said, that such a bill is matter of right; and there was no instance of not succeeding in it, but where there was no proof of title in the plaintiff; and, referring to the case of *Warner* v. *Raynes*, added, that in that case, the strongest arguments of inconvenience were used, but did not prevail. *Amb.* 236. So Lord Chancellor *Loughborough*, speaking upon this subject, remarked, that it was not for the court to say, that one party should not hold his part of the estate as he pleased, *Calmady* v. *Calmady*, 2 *Ves. jun.* 568. 570.

Although a partition here will be attended with considerable trouble and inconvenience to the parties, yet according to rules now well established, we cannot, on that account, say, that the plaintiffs' prayer for a partition shall not be granted.

3. It is farther claimed, that if a partition ought to be made, it ought not to be in the manner recommended by the committee. And we are inclined to think, that this objection ought to prevail. It is apparent, that according to that mode, the water, at certain times, must be unequally divided; and we are not satisfied, that upon the whole, it would produce equal benefit to both parties. That mode obtained the approbation of only a majority of the committee.

They have stated in their report, other modes of dividing the water. The plan of dividing the pond into two equal reservoirs, by means of a longitudinal dam or dyke, would seem likely to produce the greatest equality. But the expense of such a division would be so great, that that mode is neither recommended by the committee, nor insisted upon by either party in the argument.

The other mode stated by the committee, is, to divide the water, by means of equal orifices at the same level. Although a majority of the committee say, that this plan would be attended with so much expense and difficulty that they cannot recommend it, yet the superior court has found, that this expense would be inconsiderable in comparison with the disadvantages attending a partition as recommended by the committee

*Middlesex,*
July, 1841.

Scovil
*v.*
Kennedy.

Upon the whole, we are inclined to think, that, in view of all the circumstances, this mode is better calculated to do justice to the parties than any other which has been presented to our consideration. But as the committee in their report have not stated of what dimension those orifices ought to be, but only that the orifices might be made equal and of the same level, it will be necessary to send the case again to a committee to determine these facts. Upon examination and enquiry, they may ascertain of what size, form and level they ought to be made.

4. If partition is to be made, there can be no question but that the injunction against the plaintiffs, granted in the former case, ought to be dissolved.

Our advice to the superior court, therefore, is, that partition be made between the proprietors of the upper and lower works, by constructing one or more orifices in the flume, at the upper works, of equal area in the whole with the orifice at the lower works, and upon the same level, under the direction of a disinterested committee, to be appointed by the court; and that, upon the acceptance of the report of such committee, the injunction be forthwith dissolved.

In this opinion the other Judges concurred.

Partition decreed.

Injunction dissolved.